IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Quentin Bullock, and Jack Reid, individually and on behalf of a class, | ) ) ) | |
| Plaintiffs | ) ) ) | No. 04 C 1051 |
| vs. | ) ) ) | JUDGE Elaine Bucklo MAGISTRATE Judge Schenkier |
| MICHAEL SHEAHAN, SHERIFF OF COOK COUNTY, in his official capacity and Cook County | ) ) ) ) ) | |
| Defendant | ) | |

FILED 04 FEB 23 AM 8:48 CLERK U.S. DISTRICT COURT

DOCKETED FEB 2 4 2004

**NOTICE OF FILING**

PLEASE TAKE NOTICE that on February 20, 2004, I caused to be filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, the PLAINTIFFS' AMENDED COMPLAINT.

Dated this 20th day of February, 2004.

Respectfully submitted,

_____
One of Plaintiffs' Attorney

Thomas G. Morrissey Ltd.
10249 S. Western Ave.
Chicago, Il 60643
(773) 233-7900



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED 04 FEB 23 AM 8:40 CLERK U.S. DISTRICT COURT

| | |
|---|---|
| Quentin Bullock, and Jack Reid, individually and on behalf of a class, ) ) ) | |
| Plaintiffs ) | No. 04 C 1051 |
| ) | |
| vs. ) ) | JUDGE Elaine Bucklo MAGISTRATE Judge Schenkier |
| MICHAEL SHEAHAN, ) SHERIFF OF COOK COUNTY, ) in his official capacity ) and Cook County ) ) | |
| Defendant ) | FEB 2 4 2004 |

## AMENDED COMPLAINT

Now comes the Plaintiffs, by and through their attorney, Thomas G. Morrissey, Ltd., and Robert H. Farley, Jr. Ltd. and complain of the Defendant as follows:

This is a Civil Action for monetary damages to redress deprivations under color of law rights, privileges, and immunities secured under the Fourth, and Fourteenth Amendments to the United States Constitution, and Title 42 U.S.C. Sections 1983 and 1988.

## CLASS ACTION ALLEGATIONS

(a) Plaintiffs bring this action as a class action pursuant to Rule 23 (b) (3) of the Federal Rules of Civil Procedure.

(b) The Class consist of all male inmates who have been subjected to a strip search at the Cook County Department of Corrections (Jail) following their return to the Jail from court after there is a judicial determination that there is no longer a basis for their detention, other than

1



to be processed for release.

©) The class is so numerous that joinder of all persons is impracticable. Inmates are required by the Sheriff's Office to return to the Jail after receiving judicial determinations ordering their release. There is a written directive at the Jail which requires that strip searches are conducted of all male inmates upon their return to the Jail from Court. The Sheriff's Office, on the other hand, does not strip searched similarly situated female inmate returning to the Jail after receiving judicial determinations ordering their release. Plaintiffs believe that the class probably numbers well over 20,000 persons.

(d) Plaintiffs will fairly and adequately protect the interest of all class members as they are members of the class and their claims are typical of the claims of all class members. Each of the plaintiffs is incensed at the treatment accorded the class members and will aggressively pursue the interests of the entire class. Plaintiffs' interest in obtaining monetary damages for the violations of constitutional rights and privileges are consistent with and not antagonistic to those of any person within the class.

(e) The common questions of law and fact include:

    (i)    Whether the defendant has a policy and practice to strip search all males with judicial discharge upon their return to the Jail;

    (iii)    Whether similarly situated female inmates with judicial discharges are strip searched upon their return to the Jail;

    (iv)    Whether the visual search of male inmates is reasonable;

    (v)    Whether the defendant has knowledge of the conduct alleged herein;

    (vi)    Whether the conduct alleged herein is in violation of the Fourth, or

Fourteenth Amendments to the United States Constitution and Title 42 U.S.C. 1983;

(vii) whether plaintiffs and the members of the plaintiff class are entitled to an award of compensatory damages.

(f) The wrongful conduct alleged herein has been conducted generally upon all members of the plaintiff class in that the strip searches were conducted pursuant to a long-established plan, policy or procedure of the Cook County Department of Corrections.

(g) Common questions of fact and law predominate over questions affecting only individual class members.

(h) A class action is superior to other available methods for the fair and efficient adjudication of the controversy in that:

(i) A multiplicity of suits with consequent burden on the courts and defendants should be avoided.

(ii) It would be virtually impossible for all putative class members to intervene as parties in this action.

(iii) Upon adjudication of defendants' liability, claims of the class members can be determined by this Court.

## Facts and Parties

1. Plaintiff, Quentin Bullock, also known as Robert Bullock, is a resident and citizen of the State of Illinois.

2. Plaintiff Jack Reid is a resident and citizen of the State of Illinois.

3. Defendant MICHAEL SHEAHAN is the Sheriff of Cook County. He is sued herein

3

in his official capacity. At all times relevant hereto, the defendant was acting under color of law of the state of Illinois.

4. Defendant Cook County, under Illinois law, funds the Office of the defendant Sheriff, and is therefore required to pay a judgment entered against the sheriff's office in it's official capacity.

5. On July 17, 2002, plaintiff Quentin Bullock was arrested for armed robbery and subsequently incarcerated in Division One at the Cook County Department of Corrections ("Jail").

6. On May 1, 2003, plaintiff Jack Reid entered the Jail on a felony charge and was assigned to Division Nine.

7. On the morning of September 23, 2003, Plaintiff Reid's case was tried at the Criminal Courts Building located at 2600 S. California, in Chicago, Illinois. After a bench trial, the plaintiff was found not guilty of the pending charge and the Court entered an order (mittimus) requiring the Sheriff to release Mr. Reid from custody on the charges before the Court. Mr. Reid was under the constant supervision of C.C.D.O.C. employees and not allowed to have contact with non-employees from the moment he was taken from his division for transport to his hearing up to and including the moment he was returned to the Jail for out-processing.

8. On the morning of December 17, 2003, Plaintiff Bullock's case was tried at the Criminal Courts Building located at 2600 S. California, in Chicago, Illinois. After a bench trial, Circuit Court Judge Clay found the plaintiff not guilty of the pending charge and the Court

entered an order (mittimus) requiring the Sheriff to release the plaintiff from custody on the charges before the Court. Mr. Bullock was under the constant supervision of C.C.D.O.C. employees and not allowed to have contact with non-employees from the moment he was taken from his division for transport to his hearing up to and including the moment he was returned to the Jail for out-processing.

9. Pursuant to the Sheriff's procedures, the plaintiffs were returned to Jail after being found not guilty, each with the above referred to mittimus for the limited purpose of administratively releasing the plaintiffs from the Jail. In order to administrative release a person from the Jail pursuant to a court order, the Sheriff's Office simply checks their records to make sure that there were no additional holds on for that person, returns the civilian clothing to the individual, and verifies the identity of the person prior to the release.

10. Pursuant to the Sheriff's practice and/or policy, after returning to the Jail at approximately 1:45 p.m., on December 17, 2003, Mr. Bullock was taken into a hallway with thirty other inmates, and required to remove all his clothing. While naked, Mr. Bullock was ordered by employees of the Sheriff to extend his arms and legs apart, to squat three or four times, and then to cough while squating. Mr. Bullock was then allowed to put his clothes back on. He was then placed back into the same lockup facility in Division One which he had been incarcerated in prior to going to court that morning. He was not released from the Sheriff's custody until approximately 10:15 p.m. that night.

11. Pursuant to the Sheriff's practice and/or policy, after returning to the Jail at approximately 1:00 p.m., on September 23, 2003, Mr. Reid was also taken into an open hallway

with approximately thirty other inmates, and required to remove all his clothing. While naked, Mr. Reid was ordered by employees of the Sheriff to extend his arms and legs apart, to squat three or four times, and then to cough while squating. Mr. Bullock was then allowed to put his clothes back on. He was then placed back into the same lockup facility in Division Nine which he had been incarcerated in prior to going to court that morning. He was not released from the Sheriff's custody until approximately 8:00 p.m. that night.

12. On information and belief, the Sheriff has issued a General Order in regards to the release of female inmates with court ordered releases. The General Orders specifies that the women are not to be strip search and requires that they be promptly released from custody.

13. On information and belief, the Sheriff's Office has established procedures to temporarily place a female inmate with court ordered releases in a holding cell while the Sheriff's Office checks their records to confirm that there are no additional cases or holds on her. As soon as a female inmates eligibility for release is confirmed, the female inmate is given her civilian, her identity is confirmed by the guards and she is then released from custody. On information and belief, the practice of the Sheriff is to release these women in less than three hours from the time they return to the Jail from court.

## COUNT ONE

14. Plaintiffs reallege paragraphs 1-13 above as paragraphs 1-13 of Count I.

15. At all times relevant to this complaint, the defendant, as Sheriff of Cook County has the duty to establish procedures and policies and to train deputy sheriffs and C.C.D.O.C. employees to prevent unreasonable body searches of individuals who are in his custody and to ensure that inmates are not improperly discriminated against on the basis of gender.

16. Defendant SHEAHAN knew or should have known that male inmates are subjected to an unreasonable strip search, and only males uniformly are subjected to such a search, after a Court has determined that the prisoner is not required to be held in custody any longer.

17. Defendant SHEAHAN instituted, sanctioned, and approved the following policies, practices, customs, and procedures regarding the strip searching of only male individuals who are in the custody of the Cook County Department of Corrections after there has been a judicial determination that there is no longer a basis for their detention other than to be processed for release by the C.C.D.O.C.

   A. After the inmate has appeared in court and is returned to the holding cell adjacent to the Courtroom, he is transported by Sheriff's employees back to the Cook County Department of Corrections at 26th and California.

   B. From the time he is picked up from the Courtroom holding cell by Sheriff's employees to the time he arrives back at Cook County Jail, the inmate is under the constant supervision of Sheriff's employees and is not allowed to have any contact with anyone other than Sheriff's employees.

   C. Upon his return to the Cook County Department of Corrections at 26th and California, the detainee is placed in a bullpen in the Receiving Room of Division Five.

   D. Subsequently, a group of male inmates from the same housing unit are escorted down a corridor in the Jail and are then ordered to spread out against a wall.

   E. Pursuant to the existing policy and practice of the Sheriff, the male inmates are then required to submit to the following strip search:

7

(i) Each male inmate is ordered to remove all of her clothing.

(ii) While naked, the male inmates are ordered to extend their arms and legs apart and to squat three or four times, coughing during each squat. The inmates are then allowed to put their clothes back on.

18. On information and belief, all male inmates with judicial determinations requiring their release from custody are subjected to the strip search procedure as described above , despite the fact that similarly situated female inmates are not strip searched.

19. On information and belief, the strip searches of the male inmates are conducted without regard to whether it was reasonable to believe that any contraband or weapons may have been concealed on the male inmates, and thereby constituted unreasonable searches and seizures.

20. The Sheriff failed to establish appropriate procedures and practices to ensure that male inmates are not subjected to unreasonable body searches and not improperly discriminated against on the basis of gender.

21. The Sheriff failed to properly train and supervise the deputy sheriffs and C.C.D.O.C. employees responsible for conducting body searches of inmates to prevent unreasonable body searches and to not improperly conduct body searches on the basis of gender.

22. The strip search of plaintiffs after they have appeared in Court and the Court has determined they should be released constitutes deliberate indifference to the right of the plaintiffs in violation of the Fourth and Fourteenth Amendments to the U.S. Constitution.

23. The acts and practices described above including but not limited to the fact that males returning to the Jail after receiving judicial discharges are being forced to undergo strip searches whereas females in identical situations are not, were made with the approval,

8

authorization, knowledge, and consent of the defendant.

24. Since instituting the practice of not strip searching similarly situated female inmates, the defendant has taken no steps to set up a procedure to temporarily hold male inmates returning from court with judicial determinations requiring their release from custody, while the Sheriff's administrative release procedures are performed.

25. The policies, procedures, practices and acts of defendant alleged above, violate the rights of plaintiffs and members of the class under the Fourth, and Fourteenth Amendments to the Constitution of the United States as follows:

(a) The strip searches were conducted without probable cause or reason to believe that any contraband, or dangerous materials would be found and thereby constituted unreasonable searches and seizures in violation of the rights, privileges and immunities of plaintiffs and members of the class under the Fourth Amendment and the Fourteenth Amendments.

(b) The strip searches constituted gross invasions of the rights of plaintiffs and members of the class to privacy and due process under Fourteenth Amendment.

(c) The policies, procedures and practices of defendant relating to strip searches under these circumstances are only applied to males and not to female inmates, in gross violation of the rights, privileges and immunities of plaintiff class under the equal protection clause of the Fourteenth Amendment.

26. As a direct and proximate result of the Sheriff's policies, practices and procedures, in his official capacity, the defendant subjected the Plaintiffs and members of the class unreasonable body searches which were demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, signifying degradation and submission.

9

WHEREFORE, plaintiffs pray that this Court enter an order:

1. Finding that this action should proceed as a class action under Rule 23, Federal Rules of Civil Procedure;

2. Awarding damages to each plaintiff and member of the class against the defendant in the amount of fifty thousand dollars in compensatory damages for emotional and psychological distress, anguish, anxiety, humiliation, and degradation.

3. Awarding plaintiffs and the class their costs and attorneys fees under Title 42 U.S.C. Sect. 1988.

## COUNT TWO

27. Plaintiffs reallege paragraphs 1-26 above as paragraphs 1-26 of Count II.

28. On information and belief, the Sheriff has issued General Orders in regards to the release of female inmates with court ordered releases. Within these General Orders, the Sheriff has promulgated procedures for the prompt release of female inmates.

29. On information and belief, the vast majority of similarly situated female inmates with court ordered discharges are released in less than two hours after arriving back at the Jail from court.

30. Defendant SHEAHAN at all times relevant to this complaint is a policy maker for the C.C.D.O.C.

31. At all times relevant to this complaint, the defendant, as Sheriff of Cook County, has the duty to establish procedures and policies and to train deputy sheriffs and C.C.D.O.C. employees to prevent unreasonable delays in releasing both male and female inmates from custody after pending criminal charges are disposed of by a court of law.

32. In 1994, Michael Sheahan was named as a defendant in a class action lawsuit entitled *Denise Watson, et al., vs. Michael Sheahan*, et al., No. 94 C 6891. In that litigation, the plaintiff class alleged that the defendant violated their constitutional rights by subjected them to prolonged and excessive periods of detention after there had been judicial determinations that there was no longer a basis for their detention, other than that they should be processed for release. The *Watson* class alleged that there was a widespread and systematic practice at the Jail of delaying the release of individuals after judicial orders were entered requiring the release of individuals.

33. In the fall of 1996, defendant Sheahan entered into a settlement with the plaintiff class in *Watson*. The class included approximately 51,000 male and female inmates who were held for excessive periods of time at the Jail after receiving a judicial order requiring their release.

34. James Ryan is the Sheriff's Chief of Operations. He has testified in a deposition that although he was aware that the Sheriff entered into a settlement of the *Watson* class action, he does not recall any procedures which were put in place for inmates after the settlement to correct the systematic problems in regards to releasing individuals after they receive court ordered discharges.

35. Dennis Andrews, is currently the Superintendent of Division One where the plaintiff was housed. Previously he was in charge of the unit which was responsible for processing court ordered discharges after the *Watson* settlement. Mr. Andrews has testified that after the settlement, he failed to properly supervise the employees assigned the task of processing individuals with court ordered releases and he also admitted that after the *Watson* settlement,

11

individuals were still being held up to nine hours at the Cook County Jail after they received orders from the courts requiring their release from custody.

36. On information and belief, after the Sheriff entered into the settlement in *Watson*, male inmates with court ordered releases continued to be detained at the Jail for excessive periods after the courts had ordered their releases.

37. At all times relevant to this complaint, Defendant SHEAHAN had actual knowledge of the widespread and systemic delays in releasing male individuals with court ordered releases at the Cook County Jail. He is also aware of the Jail's General Orders which set forth the procedures for the prompt release of female inmates.

38. Although the Sheriff was on notice of his defective procedures for releasing male inmates with court ordered releases, the Sheriff continued the following policies, practices, customs, and procedures regarding the processing for the release of male individuals in the Jail, where a determination has been made that an inmate is to be released:

    A.    After the order of release or other appropriate order regarding a detainee's status is entered by the court, the policy, practice, and custom of the deputy sheriff assigned to the relevant court room is to put that individual in a holding cell adjacent to the court room for an indeterminable period.

    B.    The detainee then must wait for Sheriff's employees to pick them up from the courthouse wherein they are being held to transport them back to the Cook County Department of Corrections.

    C.    Upon his return to the Cook County Department of Corrections at 26th and California, the detainee is placed in a bullpen in the Receiving Room of Division

Five prior to being returned back to his division cell.

D. While the individual is in his division cell waiting for his release, his paperwork is reviewed by the Records Department.

E. There is inadequate supervision of the employees within the Records Department to insure that priority is given to the processing of the paperwork of male inmates who have been to court that day and have received an order to be released. The vast majority of individuals returning from court each day are to be further detained and do not receive a release order or an I-Bond.

F. After the Records Department completes its review for a group of individuals, a call is placed to each individual's division with instructions that the individual should be brought back to the Receiving Room. This procedure, in itself can take up to two hours until the individuals arrive back in the Receiving Room.

G. Once in the Receiving Room, a fingerprint is made to ensure that the individual is the proper person being released. It can take one hour or more before the individual is released from the Receiving Room to the outside world.

39. The Sheriff failed to establish appropriate procedures and practices to insure the prompt release of male detainees from custody after there has been a court determination that there are no longer criminal charges pending against the person.

40. The Sheriff failed to properly train and supervise the deputy sheriffs and C.C.D.O.C. employees responsible for processing such male detainees to prevent unreasonable delays in releasing such persons from custody.

41. The detention of plaintiff Bullock for approximately eight and one-half hours

and plaintiff Reid for eight hours after judges determined they should be released from custody constitutes deliberate indifference to the rights of the plaintiffs, in violation of the Fourth Amendment rights not to be detained for an unreasonable time and the Fourteenth Amendment's Equal Protection Clause of the U.S. Constitution due to the fact that similarly situated female inmates are release from custody promptly.

42. Despite the fact that defendant SHEAHAN has personal knowledge of the administrative delays in releasing male inmates, and the unequal treatment of male inmates after they receive a judicial release, SHEAHAN has failed to implement changes in the Jail's release practices for male inmates.

As a direct and proximate result of the Sheriff's policies, practices and procedures of failing to promptly and expeditiously process detainees for release, plaintiff Bullock was detained for approximately eight and one-half hours after receiving judicial orders of release and plaintiff Reid was similarly held for approximately eight hours. Additionally, plaintiffs lost time from their normal endeavors, and suffered great emotional pain and embarrassment.

Wherefore plaintiffs prays for an award of Fifty thousand dollars and his attorneys fees and cost.

_____
Plaintiff's Attorneys

Thomas G. Morrissey, Ltd.
10249 S. Western Avenue
Chicago, IL 60643
(773) 233-7900

14

Robert H. Farley, Jr., Ltd.
1155 S. Washington
Naperville, Il. 60540
(630)-369-0103

## CERTIFICATE OF SERVICE

I, Thomas G. Morrissey., an attorney, deposes and states that he served a copy the foregoing AMENDED COMPLAINT on parties listed above by either mailing or faxing a copy on or before 5:00 p.m. on February 20, 2004.

_____
Thomas G. Morrissey

SERVICE LIST

Mr. Patrick T. Driscoll, Jr.
Civil Bureau Chief
Office of the State's Attorneys
500 Richard J. Daley Center
Chicago, IL 60602