IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| QUENTIN BULLOCK, and JACK REID, individually and on behalf of a class, | )<br>)<br>)<br>) |
| Plaintiffs, | ) No. 04 C 1051<br>) |
| v. | )<br>)<br>) |
| MICHAEL SHEAHAN, SHERIFF OF COOK COUNTY, in his official capacity, and COOK COUNTY, | )<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Defendants Michael Sheahan and Cook County (collectively "defendants") have moved to strike and bar the expert testimony and opinions of plaintiffs Quentin Bullock and Jack Reid's, individually and on behalf of a class (collectively "plaintiffs"), retained architectural expert Donald Henry. For the following reasons, the motion is denied.

I.

Plaintiffs' two-count amended complaint alleges violations of the Fourth and Fourteenth Amendments of the U.S. Constitution based on the defendants' alleged policy and/or practice under which male inmates, in the custody of the Cook County Department of Corrections ("CCDC"), are subjected to strip searches upon returning to the CCDC for out-processing after being ordered released. Specifically, the named plaintiffs had been ordered released after being found not guilty of the charges against them.

Plaintiffs also complain that female inmates are not subjected to such searches and, therefore, this policy and/or practice violates the Equal Protection clause.

Mr. Henry is a registered architect specializing in the design of prisons and jails. He was retained by plaintiffs to inspect various areas within the CCDC, including the Receiving, Classification, Diagnostic Center ("RCDC") where the plaintiffs are held prior to entering the housing units and being subjected to strip searches, and to offer an opinion on whether there is adequate space for the construction of additional bullpens to hold male detainees who have been discharged pursuant to court order prior to their release from custody. Female detainees who have been discharged are allegedly placed in a holding cell in the RCDC and directly processed out of CCDC without being strip searched or re-entering the housing units. Defendants contend there is no space in the RCDC to construct additional bullpens to house the discharged male detainees so that they would not be required to enter the housing units and undergo strip searches.

## II.

The admissibility of expert testimony is governed by Fed. R. Evid. 702, which reads

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon

> sufficient facts or data, (2) the testimony is the
> product of reliable principles and methods, and (3) the
> witness has applied the principles and methods reliably
> to the facts of the case.

For expert testimony to be admitted under Rule 702, the movant must establish that the expert testimony is both reliable and would assist the trier of fact in understanding the evidence or determining a fact at issue in the case. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589-91 (1993). The primary purpose of Rule 702 is to avoid confusing and unreliable expert testimony. *See id.* at 592; *Loeffel Steel Prod., Inc v. Delta Brands, Inc.*, 372 F. Supp.2d 1104, 1110 (N.D. Ill. 2005). Nevertheless, "[t]he rejection of expert testimony is the exception rather than the rule, and the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *Spearman Indus. v. St. Paul Fire & Marine Ins. Co.*, 128 F. Supp.2d 1148, 1150 (N.D. Ill. 2001) (quotation omitted). Cross examination and the presentation of contrary evidence are the "traditional and appropriate means" of attacking expert testimony. *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

III.

Defendants do not take issue with Mr. Henry's qualifications as an expert, but the rigor of his methodology. As set forth in his report, Mr. Henry reached his opinions and the conclusions contained in his expert report "[a]fter a tour of the Cook County Department of Corrections including the RCDC" and reviewing other

3

expert reports, RCDC and basement floor plans, the Sheriff's 2006 Status Report and charts summarizing certain computer records on male detainees.  Defendants argue that Mr. Henry has not employed the same methodology as is standard in his professional practice because he has not: (1) reviewed all of the written discovery in this case; (2) considered all explanatory variables for the CCDC's current design, including interviewing CCDC personnel and has relied on incomplete costs estimates; (3) created finalized architectural drawings, instead of the sketches attached to his report, to illustrate his proposals; and (4) formally entered the sanitation area, which he has suggested be redesigned, but looked into it through an open doorway instead.

None of defendants' objections render Mr. Henry's opinions or testimony unreliable or irrelevant under *Daubert*.  *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999) ("no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience").  Mr. Henry is not required to review all of the written discovery in this case in order to render his opinions and defendants' remaining objections are best addressed through cross-examination.  Accordingly, defendants' motion to strike on these grounds is denied.

Defendants also take issue with Mr. Henry's cost estimates. They argue that his cost estimates are contrary to existing law because they are either incomplete or too high and the Constitution

4

does not require that defendants pay excessive costs in accommodating plaintiffs. Defendants cite *Block v. Rutherford*, 468 U.S. 576, 588 n.9 (1984), in support. In *Block*, the Supreme Court applied its ruling in *Bell v. Wolfish,* 441 U.S. 520 (1979), to determine that a jail's ban on contact visits was reasonably related to a legitimate government objective - internal security of the detention facility - and did not violate the detainees' substantive due process rights. 468 U.S. at 586.

In this case, the complaint alleges violations of the Fourth Amendment and the Equal Protection clause – neither of which are addressed in the holding in *Block*. Accordingly, defendants' argument is misplaced. In order to establish unreasonableness under the Fourth Amendment, courts must balance the constitutional rights of the detainee with the interests of the detention facility. In doing so, courts consider four factors: (1) the scope of the particular intrusion; (2) the manner in which it is conducted; (3) the place in which it is conducted; and (4) the justification for initiating it. *Bell*, 441 U.S. at 559. Under the Equal Protection clause, disparity in treatment among similarly situated individuals based on gender survives judicial scrutiny "only by showing at least that the classification serves important governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objectives." *Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1273-74 (7th Cir.

5

1983) (quotations omitted). Mr. Henry's testimony is not contrary to Fourth Amendment or Equal Protection jurisprudence and, therefore, is admissible.

IV.

For the foregoing reasons, defendants' motion to strike is denied.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: August 28, 2007